Good morning, your honors. David Zuckman on behalf of Petitioner Brown. I will attempt to retain a couple minutes for rebuttal. Your honors, there are wrong decisions, and then there are unreasonably wrong decisions. And in this particular case, the California Court of Appeal, the final state decision maker, made an unreasonably wrong decision. And it did so because it awarded summary judgment, in essence, on a disputed issue of Mr. Brown's intent. This is not to say that there isn't evidence that Mr. Brown committed a crime. There obviously is. He committed a series of crimes. However, on three different occasions, as I recall. Yes. Throughout his life. He's a liar, right? Well, I don't know him outside of these three incidents. I try not to judge. But the issue of his intent is the only thing he disputed at trial. This was it. The only thing he went after was, look, I did not intend to kill my friend, Mr. King, who was in the car with me. I didn't intend on crashing the car. Was I driving fast? Certainly. Would some people deem that to be reckless? Probably. But you're 10 miles an hour with the cops chasing him. Yes, there are bad facts with respect to, could a jury so find? And I don't dispute that a jury could find. So you're not challenging the sufficiency of the evidence. Your challenge is to the jury instruction, right? Correct. So why didn't the court's clarifying answer, when the jury indicated it had some confusion over the court's instruction, supply the basis for the District Court of Appeals conclusion that any error in the initial instruction was harmless in light of the court's clarifying answer? I think the answer to that is twofold. The first being that the jury required clarification. So it cannot be the case that the evidence was so overwhelming that any person would simply look at it and determine that. Well, you're arguing sufficiency of the evidence again. I'm trying to ask you, as a matter of law, why is the District Court of Appeals decision on the jury instruction question cured by the court's answer to the jury's instruction so that we can safely conclude that it was reasonable for the Court of Appeal to decide that the jury was adequately instructed on the law? My answer to that is that the jury instruction didn't tell the jury to disregard the earlier instruction. That this- Let me read this to you, if you don't mind. Don't worry, John. Because it supports my view that jurors are very, very careful. So here we have a jury note. And it states, the jury requests clarification of the following. One, murder is defined in Cal JEC 8.10 by three criteria, including malice of forethought. It's self-defined in Cal JEC 8.11.  Then second degree murder is defined Cal JEC 8.31 by three entirely different criteria. How are these two sets of criteria related? That is to say, are the murder two criteria a subset of one of the three murder criteria? Or does agreement on one set imply agreement on the other? And if so, which set are we to consider? We are confused as to how to proceed with two apparently different definitions in hand and only one charge to consider. Is it possible for each juror to have a copy of three Cal JEC sections cited above? If so, would the court please provide copies? The court did send in a copy of the jury instructions. And they want some more copies of those Cal JEC sections. Some jurors are concerned that the verdict sheet for count one states the charge as simply murder. And not second degree murder. Why should such an important document be imprecise? Then the judge comes back and he responds. And he states, Cal JEC 8.10 is the general definition of murder. Each of the three elements contained therein must be proven beyond a reasonable doubt in order to find the defendant guilty of murder. There are degrees of murder. And within those degrees, different types of murder. In this case, defendant is charged with second degree murder of a type whose elements are set forth in Cal JEC 8.31. Thus, in addition to the three elements contained in Cal JEC 8.10, all three elements listed in Cal JEC 8.31, or a total of six separate elements, must be proven beyond a reasonable doubt before the defendant can be found guilty of count one as charged. And that's second degree murder. Agreement on one set does not imply agreement on the other set. So I mean, here you have a very intelligent jury. They're thinking about, and this is some complexity here. And in all these instructions, the questions go right to the heart of it. And the judge gives them a very clear explanation. So he did, initially in the charge, they talked about, he listed the offenses. And he talked about a general intent instruction. All right, so some of the offenses were general intent instructions. And he took it right out of, well, he adapted it from Cal JEC. But here, if there's any doubt, he cleared it up. That goes to the question of whether there's error at all. And it was conceded by the California Court of Appeal that there was error. Oh, there's error. And so why isn't that error, without doubt, harmless when you get the questions from the jury and you get a very clear answer by the judge? My argument would be that the fact that there were many different mens reas is actually part of the reason that this is harmful, that the jury was considering a number of different and overlapping mens reas. But they did get a good, clear instruction right here. We presume that the jurors follow all of their instructions, though. There's no last instruction is best rule. There is a follow all instructions you are required to. Don't disregard some. Don't. But if there is a mistake in one, and then the question is asked about the instructions by the jury, it's all written out very precisely. And then the jury gets a very precise response from the judge that clears everything up. Why isn't that harmless error? I don't agree that it clears everything up. You don't have to agree with me. I'm just asking you the question. As your honor posits the hypothetical, there is no response to it. You're saying that they cleared it up because of the question. So there's no response that I can provide to that. That's what I'm trying to tell you. Well, I hope to sway you from that position. Go ahead. The argument would be that it's not the case that if you have three correct instructions and one really long instruction that says that that properly sets out the elements, that that means the jury no longer pays attention to the earlier erroneous instruction. But the logical conclusion to your argument is that you could never cure an error in the original jury instructions by providing a clarifying answer. You could if you told the jury that the judge made a mistake. This instruction was wrong. I misspoke. That happens. But that's implicit in the answer, because the answer, as you argue, is inconsistent with the original set of instructions that were given on what they were supposed to find. I don't think it's as clear as Your Honor is making it sound like. It was just this single issue of intent where we have a very clear, there was one oddball instruction, as in the Middleton situation. And there's a very clear dispute at trial as to what is mens rea and what isn't. But to grant you the relief under AEDPA that you are seeking, we would have to find that this answer was so bad that no fair-minded jurist could conclude that it didn't clarify the jury's confusion. It would have to be unreasonably wrong. That is correct. Which means that no fair-minded jury or jurist could disagree with your argument. That a fair-minded jurist would have to concede that the wrong instruction was about the sole disputed issue at trial, that the evidence, because the California Court of Appeal didn't really hang its hat on the note part. They hung their hat on the overwhelming evidence part. They said, You're going back to argue sufficiency of the evidence. I was just asking you a question about what the jury understood the instructions to be. The question is whether there is a grave doubt, whether there is a grave doubt in the court's mind, the reviewing court's mind, about whether the jury's decision was influenced by the concededly wrong instruction. And I think in this case, where there are sliding levels of mens rea, that is exactly the kind of case where this is harmful. Where in Middleton, the case was stark. It was either this woman was acting under a unreasonable fear of imminent peril when she shotgun blasted her husband twice, or she wasn't. It was very clear. Here, this is kind of a floating mens rea. And Mr. Brown clearly contends, this is the only issue he contested at trial. He did not, he had the owner come testify of the Acura that was stolen. It said that the car had a mechanical difficulty. It pulled to the right. If that evidence is credited, that is a defense. And that's a call for the jury to make. And that's what makes the. I think Judge Gould has a point. I have a question. Look, I accept that your client said, I didn't mean to kill my buddy. So let's assume that he didn't intend that. But nonetheless, impried malice depends on the natural and probable consequences of actions that he did intend, like trying to outrun the cops. So my question to you is, what federal law do we have from the Supreme Court or from the Ninth Circuit as to when a mistake in a jury instruction is harmless error? Hedgepeth versus Pulido is the leading case, which said that when you have contradictory instructions, you still review for harmless error. And the harmless error question, as I understand it, is, is there, I think it's the symmetry I attempted to identify is between meter, the when does an element have to go to the jury, and this end of habeas review, which is what is unreasonably wrong. And in my opinion, once Mr. Brown has made a showing on intent, it's up to the jury to make that call. And when they're misinstructed on the only disputed issue at trial, it's, I don't think you can call that harmless. I see I'm over time. Well, about 60 years ago, the president appointed Pat Brown, former governor of California and attorney general, to head a committee to rewrite federal criminal procedure and federal law in this area. They produced a bill called Senate Bill 1, but it never got anywhere. It wasn't passed. But that's in the federal area. And I read that, I think, with interest because one of the decisions that first time I sat on the circuit when I was a district judge, I wrote a decision, and Pat Brown cited it with great approval. So I know about Senate Bill 1. You never heard of it, did you? No, I think that was a little bit before my time. It wouldn't hurt to look at the history sometime. And anyway. Counsel, I have a follow-up question for you, too. I know you're over time, but I think Judge Ferguson That's your pleasure, Your Honor. So here's my question. If no rational jury could say that the natural consequence of driving at 100 miles an hour is not to create that danger that would be implied malice, then does that make the error harmless? I think if Mr. Brown would have gotten Don't you have to Well, I'm trying to, I'm accepting the hypothetical. If Mr. Brown had crashed in the first incident when he was on surface streets with lots of traffic and stoplights and was going 90 miles an hour, sure. However, he was on a highway, and he was going fast. And I would hate to admit that I have driven near those speeds on that particular road, but it's not uncommon. And even if Mr. Brown suffers from some credibility issues, if the jury believed him, they'd convict him of voluntary manslaughter, and he  in prison for murder. Thank you, Your Honor. OK, thank you. That's all. Thank you. Deputy Attorney General Matt Mulford, on behalf of the warden, may it please the court. The court's questions to counsel anticipated the argument. The only thing that I would like to add to the concept that the trial court properly cured the initial instruction error is the site to the Supreme Court authority of Waddington versus Sarosad, which is in our brief, the particular pages that are relevant to curing an instructional error at 195 through 96. So there is a legal authority from the Supreme Court that says that instructional error may be cured, particularly in the AEDPA context, such that there was no error or no federal error at all. And that appropriately resolves this case. Judge Gould's questions regarding the controlling case and jury instructions, we disagree with counsel that Hedgepeth and Nader, cases regarding wrong theories and misinstruction and omissions of elements apply to this case. This is an instructional case. Whether there was a reasonable likelihood that the jury misapplied instructions, the California Court of Appeal answered that question with a resounding no by saying that there was no possibility that the jury misapplied the instructions. And that is an appropriate application of the instructional language tests under Middleton versus McNeil, again, Waddington versus Sarosad, Boyd versus California, Estelle versus McGuire, those long line of cases about instructions. So in light of the fact that the error was cured, there is functionally no federal constitutional error at all. And in light of Mr. Brown's actions, which he displayed a conscious disregard for life, he sped and fled and lied to the police officers about who he was and denied driving the car, all of those things suggest that any error was harmless. And so unless the court has questions, I would ask that you affirm. Thank you. Thank you. No questions. This matter will submit it and appreciate the argument.
judges: Pregerson, Gould, Tallman